## REPUBLIC RUBBER CO v PATTON

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 23, 1934

Leighninger & Church, Youngstown, and R. E. Turner for plaintiff in error.

Abe Levin, Youngstown, for defendant in error.

FUNK, J, (9th Dist) sitting by designation.

## OPINION

By FARR, J.

A sufficient statement of the facts will be made in the discussion of the weight of the evidence. Gough was the manager in charge of the garage of the Republic Rubber Company, and it is claimed that Clifford Patton, the claimant, at the time of his injury, was employed as a helper of Gough's, and, upon the other hand, it is claimed that he was not an employe in the garage of the Rubber Company at any time, and that for such reason he is not entitled to compensation. Patton says that Gough asked him to go to work at the garage about January, 1929, and that each morning he would pick Patton up and take him to work, and that he worked every day, or practically every day, in the garage with Gough. Hodgson at one time obtained employment in the hose department of the Rubber Company for Patton, where he worked for several months, and upon leaving that department he went back to work in the garage. He also occasionally worked in the garage evenings while engaged in the hose department.

It is conceded that Patton did certain repair work on automobiles and trucks of the company employes and others, as well as for certain officials of the company. Gough claims to have received the money for all such repairs, and which he says was paid to the treasurer of the company. One witness, Spagnola, says that he saw Patton working on automobiles, and that he called Gough with reference to his, Spagnola's, car, but that Patton went after the car to take it to the garage; that he paid Gough $12.00 for putting rings in his car, and $7.50 for fixing a spring on his truck.

It is rather clearly shown that Gough paid Patton for his work on a weekly basis. Patton says that he was paid every Saturday night. All transactions were cash in the garage. Patton says he thought he received his pay out of the company's money. It is also shown that Gough at one time had Robbins as an assistant, and that Robbins' services and pay for the same were largely after the same fashion as that of Patton. On a certain occasion Gough took Patton with him to tow in an automobile belonging to Kearns, and says that Patton "gave him a hand." Patton says that he was sometimes left in charge of the garage, and that he sold oil to customers. Patton also says that he did work on

a number of cars belonging to officials of the company; that they daily parked their cars at the garage. Patton says, too, that he talked daily to Michella, Chief Engineer of the company; that he worked on the car of Jim Evans, plant manager; that he worked on the car of Jim Kearns, an official car; that he worked on Mr. Croysdale's car, who was general manager; that he painted Miss Sarah Casey's car, a stenographer; that he worked on Hodgson's car, the Safety Director and Employment Manager of the company; that he installed rings and welded a head in the automobile of one Spagnola, an injured employe of the company, who was receiving compensation from the company. If he rendered these services, they were done in the factory itself, because there was no welding department in the garage, and the company would certainly know about it.

It is claimed that Gough had no authority to employ Patton, and Hodgson, employment manager, was asked, "Did any one else at the company have any authority to employ other than you?" He answered, "Factory help; no." It will be recalled that this was not factory help.

It is disclosed by Hodgson that he was well acquainted with Patton. It is clear, therefore, that the employes, as well as the officials, of the company knew that Patton was employed for a considerable length of time in the garage. Evans admits that he saw him there. Hodgson saw him there. Gough admits that Patton worked in the garage.

It would be very difficult to conclude that Patton was not working in the garage with the full knowledge of the officials and employes of the company. It is true that Gough testifies that Patton was not an employe of the company. This statement, however, is merely a conclusion of fact, and in the light of all the testimony disclosed by the record, it is only fair to assume that this man Patton was at work for quite a period of time in the garage, repairing cars for various persons. Consequently, when upon the day in question both of his hands were injured, it was an inopportune time to deny his relationship to the business of this concern. Therefore, the jury having heard all the testimony, and having found under the instructions of the court that Patton was working, at least under an implied contract, for the company, it is only fair to assume that he is entitled to the benefits of such employment so far as the company is concerned and agreeable to the provisions of the Workmen's Compensation Law.

Next, it is insisted that the trial court erred in its charge to the jury, as follows:

"The relationship of employer and employe may exist as an employer and a person procured by an undoubted employe, to assist him in the performance of a task in hand, which task is clearly within the scope of authority and course of employment of said undoubted employe for his employer, where authority to procure such assistance is either expressly conferred or arises by implication from the circumstances or conditions under which the work is being done. So the fact of relationship of employer and employe may be established by inference from the facts and circumstances which may be proved by the evidence. It is not essential, nor is it always possible, to prove an express contract of employment in order to establish the relation of master and servant, but such relation may be inferred or implied from other facts and circumstances directly established. If the jury finds that it may be inferred by the greater weight of the evidence from such facts and circumstances, that the claimant was at the time of his injury engaged in the actual conduct of the business of the defendant, and with its seeming or implied consent, and within the course and scope of such inferred or implied employment, he would be entitled to participate in the fund. If the jury does not so find by that degree of proof he would not be so entitled to participate and your verdict in that event would be against his participation."

It is complained that the trial court did not by the foregoing fully instruct the jury, in that there was no instruction as to the nature and quality of the proof of facts and circumstances by which an inference of an implied contract would be justified in law. However, it is practically agreed that the foregoing instruction is good, at least as far as it goes. At the conclusion of the charge there was only a general exception by each party. If counsel desired more explicit instructions, it was his duty to so request, and having failed so to do, this case falls readily within the principle announced in the case of **State of Ohio v McCoy, 88 Oh St, 447,** in which it is held, in the third proposition of the syllabi, as follows:

"A general exception to the charge of a trial court does not raise any question of error as to the omission of the court to give further correct instruction, but pre-

sents only questions of errors of law existing in the charge as given. (**Columbus Ry. Co. v Ritter, 67 Oh St, 53,** approved and followed)."

And again, at the conclusion of the opinion by Donahue, J, at page 455, it is said: "In the case of **State of Ohio v Schiller, 70 Oh St, 1,** Judge Crow in discussing this question,, page 8, uses this language: 'The only exception taken or noted by counsel for defendant, is a general exception to the charge as a whole. · It is a familiar and very general rule of practice, applicable alike to criminal and civil causes, that mere partial non-direction, or incomplete instruction, as to a particular matter or issue, does not of itself constitute reversible error, in the absence of a request for more specific and comprehensive instructions upon the particular point or issue involved.' This, we think, is a proper statement of the law and is dispositive of this case."

The foregoing announces the proper principle to be applied here, and it follows, therefore, that no reversible error is disclosed in the foregoing, nor is the judgment against the weight of the evidence, and for the reasons given the judgment is affirmed.

Judgment· affirmed.

FUNK, J, concurs in the judgment.